```
            IN THE UNITED STATES DISTRICT COURT
              FOR THE DISTRICT OF COLUMBIA
                        ---

UNITED STATES OF AMERICA,      )
                               )
                               )
      Plaintiff,               )  CRIMINAL ACTION 25-069
                               )
v.                             )
                               )  Monday, July 7, 2025
ERLEND OLSON, JOHN             )
GALLAGHER, STEPHEN BUSCHER,    )
JOSEPH FARNOLI, JAMIL SWATI,   )
                               )
                               )
      Defendants.              )
_____ )


            TRANSCRIPT OF STATUS CONFERENCE

       BEFORE THE HONORABLE ROYCE C. LAMBERTH
             UNITED STATES DISTRICT JUDGE
                        ---


 APPEARANCES:          UNITED STATES ATTORNEY'S OFFICE
                       BY:  Alexis Hughes
                            Rebecca Ross
                            Jolie Zimmerman
                       150 M Street, NE
                       Washington, DC 20002
                       202-805-6087
                       Email:  Alexis.hughes@usdoj.gov

                       For the Government

                       COBURN & GREENBAUM, PLLC
                       BY:  Barry Coburn
                       1710 Rhode Island Avenue NW, 2nd Floor
                       Washington, DC 20036
                       (202) 643-9472
                       Email:  Barry@coburngreenbaum.com

                       For Erlend Olson


 COURT REPORTER:       CHANDRA R. KEAN, RMR
                       Official Court Reporter
                       333 Constitution Avenue, NW
                       Washington, DC 20001
```

APPEARANCES (CONT'D)

```
                        MICHAEL J. DIAMONDSTEIN, P.C. (ZOOM)
                        BY:  Michael Jay Diamondstein
                        2 Penn Center, Ste 900
                        Philadelphia, PA 19102
                        215-940-2700
                        Email:  Mjd@michaeldiamondstein.com


                        For John Gallagher

                        WHITNEY ELLERMAN
                        BY:  Whitney Ellerman
                        4419 33rd Street N
                        Arlington, VA 22207
                        202-753-5553
                        Email:  Wellerman@eellaw.com

                        For Stephen Buscher

                        LOVETT O'BRIEN LLP  (ZOOM)
                        BY:  William J. Lovett
                        155 Federal St, Ste 1300
                        Boston, MA 02110
                        617-371-1007
                        Email:  Wlovett@lovettobrien.com

                        LAW OFFICE OF THOMAS E. ZEHNLE (ZOOM)
                        BY:  Thomas Edward Zehnle
                        601 New Jersey Avenue, NW, Suite 260
                        Washington, DC 20001
                        202-368-4668
                        Email:  Tzehnle@zehnlelaw.com

                        For Joseph Fargnoli

                        MAX NICHOLAS LLC  (ZOOM)
                        BY:  Max Nicholas
                        40 Exchange Place, 18th Floor
                        New York, NY 10005
                        646-741-0229
                        Email:  Max+1@maxnicholasllc.com

                        For Jamil Swati

                                    ---
```

```
1                        PROCEEDINGS

2            (Court called to order at 10:21 a.m.)

3            DEPUTY COURTROOM CLERK:  We are on the record

4    in criminal case 25-069, United States of America v.

5    Defendant-1 Erlend Olson; Defendant-2 John J. Gallagher;

6    Defendant-3 Stephen Buscher; Defendant-4 Joseph

7    Fargnoli; and Defendant-5 Jamil Swati.

8        Starting with the government, please approach the

9    podium and state your appearance for the record.

10            MS. HUGHES:  Good morning, Your Honor.  Alexis

11   Hughes, Department of Justice Tax Division, and I'm

12   joined by AUSA Rebecca Ross for the United States.

13            THE COURT:  Mr. Coburn, I guess we can start

14   with you for the defendants, then.

15            MR. COBURN:  Good morning, Your Honor.  I think

16   there may be a government counsel on the Zoom also.

17            THE COURT:  Move the microphone over so I can

18   hear you.

19            MR. COBURN:  I'm sorry, Your Honor.  I think

20   there might be a government lawyer on the Zoom, just to

21   alert you, Your Honor.

22        No?  Okay.  I'm wrong, Your Honor.  I'm mistaken.

23            THE COURT:  Okay.

24            MR. COBURN:  Good morning.  Barry Coburn for

25   Mr. Olson.  There was not a come-up put in for
```

1       Mr. Olson, and I have waived his appearance for this
hearing.

        THE COURT:  All right.  For Mr. Gallagher.

        MR. DIAMONDSTEIN:  Good morning, Your Honor.
Michael Diamondstein.  I'm here with Mr. Gallagher to my
left.  There he is on screen just now.

        THE COURT:  Good morning, sir.

    Go ahead.  Mr. Buscher.

        MR. ELLERMAN:  Good morning, Your Honor,
Whitney Ellerman on behalf of Mr. Buscher who is on the
Zoom phone call.

        THE COURT:  Which one is Mr. Buscher?  If you
would raise your hand?

    (Defendant Buscher complies).

        THE COURT:  Okay.

    The next is counsel for Mr. Fargnoli.

        MR. LOVETT:  Good morning, Your Honor.  William
Lovett for Mr. Fargnoli, who is on the Zoom call.

        MR. ZEHNLE:  Thomas Zehnle as well, Your Honor.

        THE COURT:  I got you.

    And for Defendant Swati.

        MR. NICHOLAS:  Good morning, Your Honor.  Max
Nicholas for Mr. Swati, who is on the Zoom call.

        THE COURT:  Mr. Swati, okay.

    Okay, I see everybody.

Okay.  The purpose of this status -- and thank you, Mr. Coburn, for rectifying that mistake on our part -- is to let each of you address what you think is happening and should happen.  And I don't know if we're in a position yet to set a trial date, but at least the government can explain to me the status of discovery and where they think we are.

So I'll let the government go first.

MS. HUGHES:  Thank you, Your Honor.

Since the previous status conference on May 16th, we have provided approximately 1.1 million documents.

THE COURT:  1.3 million?

MS. HUGHES:  1.1 approximately to all five defendants.  And we have disseminated --

THE COURT:  Give me a little overview of the case and what you all think the government's case is going to look like in terms of length of trial and things like that, just so I have a better feel for things.

MS. HUGHES:  Okay.  Well, for today, we're just going to be asking jointly for another status conference to be set for early September.  I don't think we're yet in a position where we know whether all five defendants will proceed to trial.  However, if there were a trial, I think the government's case would, you know, last at

least a week -- potentially longer than that.  But we would still be looking at, you know, a fair amount of time to prepare between now and then, given the size of the discovery.

THE COURT:  Give me a little description of the million documents.  What are we talking about?

MS. HUGHES:  The documents are a combination of -- there's video, audio files, and then a lot of documents that were seized during search warrants both at the headquarters of Theia Group, as well as at Mr. Olson's residence in Albuquerque, New Mexico.  Hard drives, documents, all kinds of things.

THE COURT:  Okay.  How many of the million documents are you talking about introducing at trial?

MS. HUGHES:  It would certainly be a subset of that number of documents.  And, you know, right now we are still -- we have produced all the non-privileged documents, but we're working through -- we've disseminated a privilege protocol because there is still approximately 129,000 documents that are behind the filter wall so the prosecution team doesn't have access to them but are in the government's possession.

The privilege protocol we are -- we've disseminated it to the five defense counsel for the attorneys -- for the defendants, and we're waiting on making sure all are

good with that, and then we'll be filing that privilege protocol of how we will deal with those documents.

THE COURT:  And then what kind of schedule were you suggesting we adopt?

MS. HUGHES:  So for today, we're going to be asking for a status conference to be set for the first week in September.  My understanding, from talking to all the parties, is that the 2nd or 3rd of September works for all the parties and would work for the Court.

THE COURT:  Beyond that?

MS. HUGHES:  Beyond that, I think at that point we will have a better sense of where we're at in terms of security clearances for the defense counsel.  That's another issue that's come to the fore.  I just like a minute ago received an update that some of the defense counsel have been approved for interim clearances, but unfortunately, the interim clearance might not be enough.  We may have to wait for those to be finalized. And I would ask defense counsel to provide an update on whether they've submitted all the documentation required for those.

THE COURT:  Why do they need clearances?

MS. HUGHES:  Because there is a classified element to this case, so there will be some number of classified documents.  I don't have a hard number of

what that is, but that will be an aspect of this case.

THE COURT:  Why would some be classified?

MS. HUGHES:  Based on Theia Group's relationship with certain government agencies.

THE COURT:  And they're needed in the government's case or defense?

MS. HUGHES:  Well, they're part of the discovery, and they potentially will be needed for the government's case.

THE COURT:  Will be?

MS. HUGHES:  Potentially, yes, sir.

THE COURT:  Okay.

(Counsel conferring)

MS. HUGHES:  Okay, I apologize.  They are not part of the government's case, but we will need the clearances so that we can do the CIPA part of the litigation.

THE COURT:  Beyond the status, what are you contemplating?

MS. HUGHES:  We are still working through discovery in this case and -- as well as some plea negotiations, so we should have a better sense of what the future will look like in September at the status conference.  I apologize for not having a more firm...

THE COURT:  All right.  Let's start with

Mr. Coburn.

MR. COBURN:  Thank you, Your Honor.  Good morning again.

I'm generally in accord with what the government's proffer was just now.  I think that developing this case and getting it to a place where it will be ready to be tried is going to take a substantial amount of time. From what I understand, the volume of documents that are subject to the privilege protocol that have not yet been reviewed is large, and that process is going to take a substantial amount of time, and our review of it, of course, is going to take a substantial amount of time.

That's even aside from the overall volume of discovery in the case, which is unusually large.  In terms of our intentions, Your Honor, I think it's likely that, with the Court's permission, we would be filing at some point in the next few weeks a motion to reconsider Mr. Olson's bond status.  And there may very well be some discovery-related litigation in the case relatively early on, although I'm not sure about that.

We've been mainly in touch with Assistant U.S. Attorney Joshua Gold about this.  He's been open and forthcoming and very responsive, and so, of course, we're going to try to obviate any disputes before they have to be presented to the Court.

But I think the process overall just in terms of reading and digesting and -- the relevant material and making sure that we've done our investigation and otherwise prepare for trial is going to take a substantial amount of time.

THE COURT:  Give me a sense of what it is you've seen as to the material and what we're talking about.  The government didn't give me any sense.

MR. COBURN:  Well, there is -- like the government said, there's like -- something like 1.3 million documents that have been produced.  It's a number of terabytes, I believe.  And my own status with respect to that at this point is I'm much closer to the beginning than to the end.  I have a long way to go just even in terms of -- I mean, I've been sort of perusing what's available, but I've barely scratched the surface in all candor.  I've --

THE COURT:  What are these and why is it so voluminous?

MR. COBURN:  I think mostly what we're talking about is a large volume of data that came off the company in question, Theia's, servers.

Now, the extent to which all that data is really going to matter in terms of guilt/innocence in this case, I'm not sure -- I'm not convinced that much of it

will.  But at this moment I don't know enough to definitively exclude from consideration virtually any of it.

There's also just a lot of history in the case in terms of the company's interactions with various government agencies.  There's a receivership in the U.S. District Court in the Southern District of New York that bears directly on this case, and I'm studying the record of that case, and that's voluminous too.  And I'm not even sure that's actually within the scope of the discovery the government's provided so far.

I just -- I wish I could give Your Honor a more definitive sense of it, but I'm just still too close to the beginning.

THE COURT:  Thanks, Mr. Coburn.

Let me go to Defendant-2, then, Mr. Diamondstein.

MR. DIAMONDSTEIN:  Good morning, sir.

THE COURT:  Good morning.

What can you add?

MR. DIAMONDSTEIN:  I generally agree with the government and Mr. Coburn.  I think the volume of information is significant.  I mean, I've got a team of multiple lawyers working on it and we've had the discovery now for, what, six, seven weeks, and we're not totally through it, not anywhere near through it.

I disagree, though, with Mr. Coburn and the government about a couple of things. I think there will be -- at least with respect to Mr. Gallagher, there will be a significant number of documents relevant to whether -- you know, with respect to his purported culpability. You know, from our perspective, it's more of a circumstantial case, and, you know -- like, there's one piece of the case that, you know -- if the government is going to try to prove my client's involvement, there's like 5- or 6,000 emails that are potentially relevant just to one portion of the case.

I think I also disagree with the government about the length of the trial. And again, we're still very much near the beginning and going through the documents, because many of these witnesses, if the government doesn't call them, I'm going to call them.

And there's witnesses from all over the United States, from all levels of government, either former or -- at this point mostly former government agencies and government representatives, who are relevant in this case, who have at least pieces of their statements or MOIs that we've seen so far would be relevant to what we would suggest is my client's lack of culpability.

The other thing that is going to take, from our perspective, a significant amount of time is I believe

that I would require top secret clearance.  In
conversations with my client, based upon his
relationship with the U.S. Government, I'm going to
require top secret clearance.  And much of my
investigation is on hold until I can get that clearance
so I can receive information so I can start requesting
subpoenas and or litigating before Your Honor about
whether or not I'm entitled to classified information.

So -- but generally, I agree with the government
that we need more time to figure out -- we need more
time to figure out how much time we need, I think would
be the best way of clarifying that.

THE COURT:  Has the government given you the
forms to apply for the clearance yet?

MR. DIAMONDSTEIN:  Yes, sir.  I've applied for
it.  I've had my in-person meetings.  I've had some
discussions with the government.  They believe that I
just need secret clearance, and that may be so for
either what the government knows or what the government
thinks they have.  But based on rudimentary -- because
they can't tell me, but based on rudimentary discussions
with my client, I will require top secret clearance.

THE COURT:  The secret they can do much more
simply.  Top secret obviously is going to take more
time.

MR. DIAMONDSTEIN:  Yes, sir.

THE COURT:  I'm going to need to appoint a court security officer, then, to oversee that process.

MR. DIAMONDSTEIN:  If the Court pleases, I think there is one.  I'll defer to the government whether we put her name on the record or not, but I'm pretty sure that I have an agent that I've been emailing with that --

THE COURT:  Okay.  Who have you been talking to?

MR. DIAMONDSTEIN:  Am I allowed to say that on the record?

THE COURT:  Just a moment, and I'll consult the government.

MS. ROSS:  Good morning, Your Honor.  I think a lot of this is going to be taken care of in CIPA litigation.  I believe all of defense counsel is in touch with CISA, which is obviously not classified, but I think we should avoid getting into too much detail here, especially because much of this will be taken care of through the CIPA process.

THE COURT:  All right.  For now, I'll let it go at that.

MR. DIAMONDSTEIN:  Thank you.

THE COURT:  Not for long.

The next defense counsel, I guess would be Mr. Ellerman.

MR. ELLERMAN:  Your Honor, I don't have much to add to what's been said.  I will say that my view of the case in terms of complexity and in terms of length of trial is much closer to counsel for Mr. Gallagher than it is to Ms. Hughes.

And since she asked, I have submitted my forms and have been told that they're complete for security clearance.

Any other questions I'm happy to answer.

THE COURT:  Thank you.

MR. ELLERMAN:  Thank you.

THE COURT:  And then for the defendant, the fourth defendant will be Mr. Lovett or Mr. Zehnle.

MR. LOVETT:  Yes, Your Honor.  So I'm generally in agreement with the time frame for a status conference in September.  I have been interviewed for my security clearance.  I do have some questions for the government about the privileged material protocol and have reached out to Joshua Gold on that issue.  And we're working through the documents.

It is voluminous documents.  There's corporate records.  There are memoranda of interviews.  There are recorded interviews of witnesses.  So we're making our

way through it, trying to identify documents that might be relevant to my client.

And I agree with the other defense counsel. I think this trial would be lengthy in terms of, you know, bringing in defense witnesses and documents. There are numerous documents that are relevant: Emails, text messages, recordings. And they all -- I think they all bear on, you know, the defense, at least in our case.

THE COURT: Okay. And then for Mr. Swati, Mr. Nicholas.

MR. NICHOLAS: Good morning, Your Honor. I do not have anything substantive to add. I think people have spoken in an informed way this morning. I agree with what's been said. There's a ton of discovery. We're working diligently to go through it.

Since the government asked, I'll just provide the update. With respect to security clearance, I've submitted the forms. I've been fingerprinted. I have not yet had my interview scheduled, but I can reach out to the relevant agent and check on the status of that, but I think it's moving along.

THE COURT: All right. Does the government want to add and tell me more about the security clearances?

MS. ROSS: Your Honor, the only other thing I

just want to make sure is very clear here is that the
government does intend to file a CIPA Section 3 motion.
And I believe we have mentioned that before.  That
Section 3 motion will, of course, lay out in more detail
the procedures to the CIPA litigation, which will
hopefully answer a lot of defense counsel questions
which cannot be answered here now.

Additionally, the security clearances that defense
counsel are required to get is only for that classified
discovery.  And, again, the Section 3 motion will spell
that out in more detail.  I just want to make that very
clear.

THE COURT:  To the extent they may have
discovery that he's talking about from the second
defendant, Mr. Gallagher, he wants to use classified
information.  He's going to have a procedure where he
identifies in advance so he can determine whether it's
properly classified.

MS. ROSS:  That's right, Your Honor.  It's our
position that none of that --

THE COURT:  That will be in our motion?

MS. ROSS:  That will all be spelled out in
motion, Your Honor.  I don't think we can go into that
here.

THE COURT:  When are you expecting to file

that?

    (Counsel conferring)

      MS. ZIMMERMAN:  I'm Jolie Zimmerman.  I'm with the U.S. Attorney's Office as well.  I just haven't entered my appearance yet.

    So there are two separate things.  There's the CIPA Section 3 protective order, which will spell out all the procedures for dealing with any classified discovery that the government produces.  That, we've sent to defense counsel.  We're just waiting to hear back from them.  Assuming they all agree to it, we'll file it as a consent motion.

    A separate issue will be -- we do anticipate there will be a CIPA Section 4 motion that the government will file.  We don't have a time frame for that yet, Your Honor.

    And then because there will be a very small amount of classified discovery, it is possible that there will be Section 5 and Section 6 litigation.  We just can't anticipate that at all at this time, if that helps answer the Court's questions.

      MR. DIAMONDSTEIN:  Excuse me, Your Honor.

      THE COURT:  Yes.

      MR. DIAMONDSTEIN:  I don't want to interrupt.

    Can I speak now?  I can't tell if the government is

still ready to speak from the Zoom.

THE COURT:  She's concluded for the moment.

MR. DIAMONDSTEIN:  Thank you.  I just wanted to make clear so that there was no confusion.  I agree that the government likely believes that they have a small amount of classified material.  I just want to make clear that we believe that there is material outside of what the government likely has that will be relevant to our defense that I will require top secret clearance for.  I just wanted to make sure I clarified my remarks.

MS. ZIMMERMAN:  And there actually is also, I believe, a provision in the CIPA Section 3 protective order that addresses that type of issue because it's not uncommon.  There are times when defense counsel believe that they have in their own possession classified information, and there's a process for dealing with that as well.  So we can certainly address that when we need to.

THE COURT:  When do you expect to file that CIPA motion?

MS. ZIMMERMAN:  For the Section 3, hopefully this week as soon as we hear back from the rest of defense counsel.  Thank you.

THE COURT:  All right.  Other than setting this other status, which counsel agreed upon the date, I'll

look at that in a moment, but are there any other -- any counsel that want me to do more than that today in order to file the CIPA motion today?

   MR. COBURN:  Not for us, Your Honor.

   MR. DIAMONDSTEIN:  No, sir.

   THE COURT:  For Mr. Buscher.

   MR. ELLERMAN:  No, thank you, Your Honor.

   MR. LOVETT:  Not for Mr. Fargnoli.

   MR. NICHOLAS:  No, thank you, Your Honor.

   THE COURT:  And the speedy trial waiver I have now goes where?

   MS. HUGHES:  Yes, Your Honor.  In terms of the speedy trial, we would ask that you exclude the time between now and the next status conference so that it meets the end of justice.  All five defendants have consented to the exclusion.

   THE COURT:  Did you all have a -- dates you all agreed upon in the first week in September?

   MS. HUGHES:  Yes, Your Honor.  It -- well, either the 2nd or 3rd of December -- or September.

   THE COURT:  Okay.  The 2nd at -- I don't know where counsel all are.

  Is 10:00 a.m. a good time, or do you want it 11:00? Or are there any counsel that had problems with that today?

MR. DIAMONDSTEIN:  Your Honor, Mike Diamondstein.  Again, may I speak?  I don't want to step on someone's toes if someone -- thank you.

If my client and I -- if the Court wishes us to be in D.C., we're both in Philadelphia; we can make that happen, so we would ask for either 10:00 or 11:00.  Or if it's a Zoom, whatever time the Court thinks is appropriate.

THE COURT:  Okay.  Any other counsel have a preference on time?

MR. COBURN:  No, thank you, Your Honor.

THE COURT:  All right.  Let's set it for September 2nd at 10:00, and then -- I'm accepting on each of your behalf the waiver of appearance now to this kind of procedural hearing, and I will do that September 2nd as well.  At some point -- I don't know how much we can do without you being here in person, but I think defendants are entitled to waive appearance now, and I'll toll speedy trial until September 2nd.  We'll see what further schedule we can set then.

I would like to get the CIPA question resolved because I know that will stall everything, especially if top secret ends up being involved because I know how long it takes these days, having had some experience with that in other cases.  Secret is not as big a

problem, but top secret is always a problem because they have to decide whether they've got to do some field interviews and things like that.

All right.  Anything else -- anybody want to say anything else today?

MR. COBURN:  No, thank you, Your Honor.

MR. DIAMONDSTEIN:  No, sir.

MR. ELLERMAN:  No, Your Honor.

MR. NICHOLAS:  No, thank you, Your Honor.

THE COURT:  Okay.  Thank all of you, Counsel.

And defendants, I'll see you back September 2nd then at 10:00 a.m.  The court will be in recess.

I always like cooperation by counsel, so obviously it makes it easier for the Court.  But I assure the defendants, I don't know anything about this case. They're going to educate me, but I'm going to make sure you have a fair trial, so don't think that because counsel are agreeing on anything that your rights are not going to be protected by me.

I know what my role is.  And I know the role of counsel is to try to move things along, and I try to move things along, but I also know I'm going to make sure there's a fair trial for each defendant.

The court will be in recess.

(Court in recess, 10:47 a.m.)

- - -


CERTIFICATE


    I, Chandra Kean, RMR, hereby certify that the foregoing transcript is a true and correct transcription of the proceedings held in the above-titled matter.


_____        July 18, 2025
    Chandra Kean, RMR                DATE