UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

*[handwritten: Let this be filed. /s/ Royce C. Lamberth  U.S.D.J. 1/20/26]*

| | |
|---|---|
| **UNITED STATES OF AMERICA** : | **CASE NO.  25-CR-69-4 (RCL)** |
| v.  : | |
| : | **VIOLATION:** |
| : | **18 U.S.C. § 1349 (Conspiracy to Commit** |
| **JOSEPH FARGNOLI,** : | **Wire and Bank Fraud)** |
| : | |
| **Defendant.** : | |

## STATEMENT OF OFFENSE IN SUPPORT OF GUILTY PLEA

As set forth in the attached plea agreement, Defendant Joseph Fargnoli (hereinafter referred to as "Defendant" or "Fargnoli") agrees to admit guilt and enter a plea of guilty to Count One of the Indictment, charging him with Conspiracy to Commit Wire and Bank Fraud, in violation of 18 U.S.C. § 1349.

### I. Maximum Penalties

This violation of 18 U.S.C. § 1349 carries a maximum sentence of 20 years of imprisonment; a fine of $250,000 or twice the pecuniary gain or loss of the offense, pursuant to 18 U.S.C. § 3571(b)(3), (d); a term of supervised release of not more than 3 years, pursuant to 18 U.S.C. § 3583(b)(2); mandatory restitution under 18 U.S.C. § 3663A; and an obligation to pay any applicable interest or penalties on fines and restitution not timely made.

### II. Elements of the Offense

The elements of a violation of 18 U.S.C. § 1349 are:

1. Two or more persons, in some way or manner, agreed to try to accomplish a common and unlawful plan to commit wire and mail fraud, as charged in the indictment; and

2. The defendant knew the unlawful purpose of the plan and willfully joined it.

1

**III. Factual Proffer**

Pursuant to Federal Rule of Criminal Procedure 11, the United States and the Defendant, with the concurrence of Defendant's attorney, stipulate and agree that the following facts are true and accurate. The following statement of facts does not purport to include all of the Defendant's illegal conduct. It also does not purport to be an inclusive recitation of everything that the Defendant heard, knew, or witnessed concerning the illegal activities committed by Defendant and others. It is intended to represent sufficient information for the Court to find a factual basis for accepting the Defendant's guilty plea.

Pursuant to Federal Rule of Criminal Procedure 11, the Government and Fargnoli, with concurrence of his attorney, agree and stipulate as follows:

1. Theia Group Incorporated ("Theia") was founded by Erlend Olson and incorporated in the State of Delaware on September 9, 2015. Theia was headquartered in Philadelphia, Pennsylvania and Washington, D.C.

2. Joseph Fargnoli was an engineer who was involved with Theia since shortly after its founding in 2015. Fargnoli was Chief Technology Officer of Theia and held an ownership interest in the company. Fargnoli resided in New York.

3. Theia was a start-up aerospace company that advertised plans to launch 112 satellites, to be known as the Theia Satellite Network ("TSN"), which would provide continuous remote sensing data covering the entire globe simultaneously. According to Theia, the data obtained from the TSN and the speed with which it could be processed by Theia would transform human ability to detect and respond to events, such natural disasters, crime, and

2

global warming, as well as identifying certain natural resources under the earth's surface. Theia asserted that this information would be invaluable to government and commercial clients.

4. Theia estimated that launching the TSN would cost between ten and fifteen billion dollars. The target launch date for the satellites was sometime from 2022 to 2025. While Theia initially raised money and developed plans for the TSN, it sought to generate revenue and prove its concept prior to the launch of the TSN by equipping aircraft with its remote sensing technology to generate data.

5. Theia's primary funding strategy was the Master Partner Program ("MPP"). Under the MPP, Theia would secure sovereign nations as funding partners by offering data and data analysis from Theia's planned satellite network in perpetuity in exchange for an upfront payment, usually $2 billion. While the MPP nations waited for the launch of the TSN, they would purportedly receive data and services from Theia's aircraft program. Theia never received any funds from any country under the MPP despite claims to the contrary made to prospective investors.

6. Instead, Theia was funded exclusively by more than $250 million in loans and investments from institutional and individual investors and lenders. These investments were fraudulently obtained by Theia materially misrepresenting its financial position, contracts with third parties, and technical capabilities.

7. Beginning in May 2020, Jamil Swati, an individual investor in Theia, and an

3

associate of Swait's (identified in the indictment as Associate 2), were considering forming an investment vehicle to make a high-dollar investment in Theia via an aggregation of numerous potential investors—Investment Group 1.

8. In approximately August 2020, Associate 2 reached out to the CEO of Wealth Management Company 1 for assistance in recruiting investors to Investment Group 1. From August 2020 through December 2020, Wealth Management Company 1 began its own due diligence on Theia and made several visits to Theia's Washington, D.C. headquarters. Throughout this process, Wealth Management Company 1 also began to reach out to their network of clients about investing in Theia through Investment Group 1. Throughout November 2020, Fargnoli and others participated in meetings with clients of Wealth Management Company 1 to discuss potential investment in Theia, along with Olson, Swati, and other Theia representatives.

9. To encourage subscription in Investment Group 1, a virtual investor presentation was scheduled for December 4, 2020, at 5:30 GMT to be held over the video conferencing application Microsoft Teams.

10. On the morning of December 4, 2020, Fargnoli received an email from Swati attaching a PDF of a slide deck entitled, "201201 THEIA INVESTOR PRESENTATION – NOT PROTECTED.pdf." Additionally, Fargnoli was informed that he would be responsible for presenting two sections of the presentation.

4

11. Fargnoli recognized the presentation as having been created by Olson. Fargnoli's assigned portion included two slides entitled "Proven Analytics." Fargnoli knew that these slides contained statements that Theia had performed work that in fact was completed by other companies. Fargnoli recognized that these slides contained materially false information and that the purpose of the presentation was to obtain money from potential investors. Fargnoli also knew that Olson understood the slides included materially false information and the purpose of the presentation was to obtain money from potential investors.

12. Fargnoli agreed to present the slides. Later on December 4, 2020, Fargnoli participated in the investor presentation over Microsoft Teams. Olson and Fargnoli were in Washington, D.C. at the time of this presentation, while many of the attendees were spread out around the country and the world.

13. During Fargnoli's portion of the presentation, he presented the "proven analytics" slides. Specifically, Fargnoli described Theia's decision-grade analytics as market applications where Theia's selected remote sensing technology had purportedly been successful using aircraft. In describing these applications, Fargnoli made multiple references to Theia's "customers," although Theia had no paying customers and no income.

14. Fargnoli also discussed the ability of Theia's selected technology to track perpetrators of crimes and the technology's success in "closing cases." Fargnoli described this as something "we're proving from aircraft and we're now moving to space." Theia was not tracking preparators of crimes and

closing cases. That work was performed by other companies, not Theia.

15. Regarding the insurance companies that Theia was working with, Fargnoli stated, "We are doing this on a daily basis literally right now with insurance companies validating this." Fargnoli described the ability of Theia's selected technology to assist insurance companies in evaluating claims. Fargnoli went on to present false information about 7,000 claims paid based on Theia's data in 14 major natural disasters.

16. Wealth Management Company 1 and their clients in attendance were impressed by the presentation, which helped generate interest in subscribing to an investment in Theia through Investment Group 1.

17. Ultimately, Theia received $24,593,100 from Investment Group 1 in exchange for a convertible promissory note on January 13, 2021. The representations made by Fargnoli during the December 4, 2020 presentation were material to Investment Group 1's investment—that is, they were capable of influencing the decision to invest.

18. Fargnoli further agrees that the presentation to Investment Group 1 was in part designed to obtain investments from Investment Group 1 and that the presentation was transmitted through wire communications in interstate commerce.

19. Fargnoli agrees that with his knowledge, it was reasonably foreseeable to him that Theia would obtain substantial investments from Investment Group 1.

Respectfully Submitted

                Jeanine Ferris Pirro
                United States Attorney

BY:   */s/ Joshua Gold*
       Joshua A. Gold
       Rebecca G. Ross –
       Jolie Zimmerman
       Assistant United States Attorneys

       Alexis Hughes
       Trial Attorney
       Department of Justice – Tax Division

## DEFENDANT FARGNOLI'S ACKNOWLEDGMENT

I have read the Statement of Offense setting forth the facts related to my guilty plea to the Information in this case, charging me with Conspiracy, in violation of 18 U.S.C. § 1349. I have discussed this proffer fully with my attorneys, William Lovett and Thomas Zehnle. I fully understand this proffer and I acknowledge its truthfulness, agree to it, and accept it without reservation. I do this voluntarily and of my own free will. No threats have been made to me nor am I under the influence of anything that could impede my ability to understand this proffer fully.

Date: 1/20/2026

Joseph Fargnoli

## ATTORNEY'S ACKNOWLEDGMENT

I have read each of the pages constituting the Government's proffer of evidence related to my client's guilty plea. I have reviewed the entire proffer with my client and have discussed it with him fully. I concur in my client's agreement with and acceptance of this proffer.

Date: 1/20/2026

William Lovett, Esq.
Thomas Zehnle, Esq.
Counsel for Defendant